W. E. JAMES AND J. J. JAMES *vs.* JACK SMITH AND ADAM BRISTOW, *in re.* THOMAS C. COX, SHERIFF.

The Circuit Court of Common Pleas has no jurisdiction, upon a mere rule to shew cause, to attach a Sheriff for contempt in failing to execute a warrant, issued by a Magistrate in a civil proceeding, directed to the Sheriff, and legally in his hands for execution.

Where the Circuit Court attaches a Sheriff for contempt in a proceeding in which that Court had no jurisdiction, the Sheriff may be discharged under *habeas corpus* by a Justice of the Supreme Court.

A co-ordinate tribunal may not disregard, much less set aside, the judgment of another Court, for mere errors of judgment or irregularities of procedure; but where the Court is without jurisdiction its judgment is void, and must be so held whenever it comes before another Court.

BEFORE RUTLAND, J., AT DARLINGTON, JULY TERM, 1870.

Appeal from an order directing an attachment for contempt to issue against the Sheriff.

The facts were these: Under the Act of 1866, entitled "An Act to amend the law in relation to tenancies," (13 Stat., 416,) W. E. James and J. J. James instituted proceedings, in January, 1870, before a Magistrate of Darlington County, against Jack Smith and Adam Bristow, and on the 24th January, 1870, the Magistrate issued a warrant, under his hand and seal, directed to Thomas C. Cox, Esq., Sheriff of said County, commanding him to eject Smith and Bristow, "and all and every other person whatsoever, in possession of the premises, and deliver" to W. E. James and J. J. James full possession of the same.

The warrant was lodged with the Sheriff, and he having failed to execute it, the plaintiffs therein applied to, and obtained from, the Court of Common Pleas, for Darlington County, a rule on the Sheriff to shew cause why he should not be attached for a contempt, because of his failure to execute the warrant according to its exigency.

The Sheriff answered the rule, and for cause submitted, *inter alia*, that the plaintiffs " have no right to procure an attachment against him for contempt of Court for failing to execute the process of another and inferior jurisdiction."

His Honor overruled the return, and ordered " that the rule be made absolute, and that the said Thomas C. Cox, Sheriff as aforesaid, do proceed forthwith to execute the said warrant according to its exigency, and that, upon his failure so to do, on or before the 18th day of July instant, he be fined in the sum, &c., and be imprisoned, &c., till he purge his contempt; and that a writ of attachment do issue to enforce the provisions of this order."

Thomas C. Cox appealed on the ground, *inter alia*, that his Honor the presiding Judge had no right to entertain a rule against the Sheriff for failing or refusing to execute the process of an inferior tribunal, or any tribunal except his own Court.

Pending the appeal, the plaintiffs issued an attachment under the order, and Cox was arrested thereunder. He applied to the Chief Justice, at his Chambers, at Sumter, for a writ of *habeas corpus*, which was granted, and on a return thereto being made he moved for his discharge. At the first hearing, His Honor the Chief Justice overruled the motion for a discharge, but on a rehearing he granted it, and filed an opinion and order, dated the 27th August, as follows:

MOSES, C. J.. This second application on the part of the petitioner enables me to correct an error which, I now think, I committed in my decision rendered, *ore tenus*, immediately after the close of the first argument. If I am right in the conclusion which I have reached, I do not regret the opportunity to reform my judgment, according to my present conviction, after some consideration and reflection.

The return to the writ recites the whole proceeding which resulted in the imposition of the fine and the imprisonment of the petitioner. All the facts on which the order made by the Circuit Judge is founded are incorporated into the writ of attachment, by virtue of which the party is held under arrest.

It, therefore, appears that the writ issued for a supposed contempt on the part of the petitioner, who is the Sheriff of Darlington County, " because of his failure to execute a warrant of ejectment, issued (in the case therein stated) by E. W. Lloyd, Esq., Magistrate, and lodged with the said Sheriff, according to its exigency."

The Sheriff is the ministerial officer of the Circuit Court, bound to enforce all its orders, mandates and judgments in matters properly cognizable by it as a superior Court. If it has·a general jurisdiction over the subject, its conclusion, even if erroneous, is binding until reversed by appellate authority.

Its decision, while it stands, must· be accepted as effectual as if pronounced by a Court of the last resort. If a Sheriff, therefore, assumed, in a case thus arising, to question the validity of the order or precept which he is required to execute, and refrained from enforcing it, he would, without doubt, be liable to a rule, and, under it, to such punishment, by fine and imprisonment, as the Judge might see fit to impose for the contempt.

It is necessary, therefore, to consider whether, by virtue of the official relation ·of the Sheriff to the Circuit Court of his County, he is liable to answer to it as for a contempt in not obeying the precept of a Magistrate's Court, which, in conformity to law, may be directed to him, without in any way bringing to its review and revision the proceedings of the said Court on which it was founded, save by the rule to shew cause why an attachment should not issue.

It is not pretended that the Circuit Court,· though a Court of Record with the general jurisdiction which pertains to tribunals of that character, has such right at Common Law. The exercise of the power is claimed by force of the 10th and 20th Sections of the "Sheriff's Act of 1839," (11 Stat. at Large, 28, 30,) which are as follows:

"*Sec.* 10. The Sheriff, or his regular deputy, shall serve, execute and return every process, rule, order or notice issued by any Court of Record in this State, or by other competent authority; and, if the Sheriff shall make default herein, he shall· be subject to rule and attachment as for a contempt, and he shall also be liable to the party injured in a civil action."

"*Sec.* 20. Any Sheriff shall be liable to be proceeded against in any Court of Record in this State for a contempt for misconduct or malpractice in presence of the Court, or·for neglect of duty; in the former case, he shall be liable to be attached forthwith, and, in the latter case, a rule shall issue against him, requiring him to· shew cause why he ought not to be attached: Provided, in all cases, interrogatories may be propounded," &c.

Are these Sections to be so construed as to extend their provisions to contempts alleged to be committed, either by neglect in executing the process of a Magistrate's Court, or by willful default in

obeying it? or, in other words, do they do more than express and declare the power which the said Court already had in the matter of contempts by its officers? The 10th Section only recites obligations which already attached on the Sheriff, and sets forth the mode of his punishment, which in no way differs from that which was before prescribed by law. The 20th Section provides for procedure against him, " in any Court of Record, for a contempt, for misconduct or malpractice in presence of the Court, or for neglect of duty." In the former case he is made liable to attachment forthwith, and in the latter he is first to shew cause. If the Sheriff, by this Section, is to be held amenable to attachment by the Circuit Court for a contempt of a Magistrate's Court, " for misconduct or malpractice in its presence," and, as the last named Court possesses the identical power, it might follow, that the Circuit Court could take notice of a matter as a contempt in the inferior Court, which that Court did not so consider. If the words can be construed as extending to any Court of Record jurisdiction over contempts in another Court, the consequence would be, that the Circuit Court would notice a contempt of the Court of Probate, or either of them notice a contempt committed against the Supreme Court. The mere reference to this anomalous result, which is the legitimate inference from the argument, shows that the construction contended for cannot prevail.

The Section never contemplated that one Court should judge and determine in a contempt charged to have been committed against another. It would be an extra judicial proceeding, and where it is claimed, the authority must be shown by positive direction.

The purpose of the Act referred to was to bring together, in as convenient and concise form as possible, the duties, rights and liabilities of Sheriffs, as the Legislature also did in regard to Magistrates, Clerks, Ordinaries, Commissioners and Coroners, that these officers might have the opportunity of readily informing themselves of the duties exacted of them, and the obligation which the office imposed. A reference to the several Acts will shew that, save as to the Commissioner, they demand scarcely any duty which, either by common law, or statute, was not already required of them, and as to him, it was but a recital of his duties by statute, or the practice of the Court of Equity, with some extension of his powers.

The Act of 1866, (13 Stat., 416,) does require the Sheriff to execute process of ejectment when directed to him by a Magistrate.

Does it follow, however, in the event of his refusal or neglect, that he is amenable to attachment by the Circuit Court?

By what process did the said Court possess itself of the case before the Magistrate, so as to ascertain if the proceeding was within the jurisdiction, for, being an inferior tribunal, if it has exceeded it, the judgment is absolutely void.—*Kemp* vs. *Kennedy*, 5 Cranch, 173; *Ex parte Watkins*, 3 Pet., 193; *Gregg* vs. *Story*, 1 Dall., 135.

The Sheriff certainly might demand that the question of jurisdiction should be decided before he is subjected to punishment for not obeying a precept which might be a nullity. Is the Circuit Court, by a mere proceeding by rule, to bring the cause from the inferior Court before it, so that it may examine and decide on a jurisdictional question which might be involved?

This would be a method of bringing up the proceedings of an inferior Court for review which would not only be without precedent, but in the face of all those forms which the law prescribes for the exercise of that power by the Circuit Court.

Holding, therefore, that the Circuit Court, by virtue of the said Sections of the Act of 1839, have no authority in the premises to rule and attach the Sheriff, I am now to inquire whether it can refer its action, in that behalf, to its general common law powers as a Court of record?

Ch. J. Marshall, in *Ex parte Watkins*, 3 Pet., 206, says: "The cases are numerous which decide that the judgment of a Court of record, having general jurisdiction of the subject, although erroneous, is binding until reversed." Does this general jurisdiction of the Circuit Court, in matters of contempt against its own authority, preclude an inquiry into its power to draw within the scope of its conceded authority a right to judge of contempts committed by a disobedience of the process of an inferior and limited Court?

Unless the proceedings can be brought up by appeal, where it is allowed, or by a writ of *certiorari*, or where they are necessarily before the Court by the return to a writ of prohibition or *mandamus*, so that the judgment, when given, proceeds directly from such Court, in the matter thus before it, it cannot regulate, interfere with, or enforce the process of such inferior Court. It has not, in this view, "a general jurisdiction of the subject."

The same eminent and distinguished jurist, (Ch. J. Marshall,) in *Rose* vs. *Hurley*, 4 Cranch, 269, said: "Upon principle, it would seem that the operation of every judgment must depend on the

power of the Court to render that judgment, or, in other words, on its jurisdiction over the subject-matter which it has determined." Mr. Justice Trimble, in delivering the opinion in *Elliott* vs. *Prescot,* 1 Pet., 340, says : " Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause. Whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other Court. But if it acts without authority,' its judgments and orders are regarded as nullities.— They are not voidable, but simply void, and form no bar to a recovery sought, even when prior to a reversal in opposition to them.

"They constitute no justification, and all persons concerned in executing such judgments or sentences are considered, in law, as trespasses. This distinction runs through all the cases on the subject, and it proves that the jurisdiction of any Court exercising authority over a subject, may be inquired into in every Court where the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceedings."

This principle was not only recognized in *Thompson* vs. *Tomlie,* 2 Pet., 163, and adopted in *Wilcox* vs. *Jackson,* 13 Pet., 511, but was referred to as the distinguishing rule in regard to the inquiry, permitted to another Court, into the validity of a judgment of a co-ordinate tribunal collaterally brought before it.

In *Lessee of Hickey, et al.,* vs. *Stewart,* 3 How., 762, the ruling, in *Elliott* vs. *Prescot* was again sustained ; and the same conclusion may be found in *Borden* vs. *Fitch,* 15 Johns., 141 ; *Mills* vs. *Martin,* 19 Johns., 33 ; *Latham* vs. *Edgerton,* 9 Cowan, 229, and in many decisions of the Courts of the several States.

In *Miller* vs. *Miller,* 1 Bailey, 245, Colcock, J., delivering the opinion, says : " It never could· have been intended to give effect anywhere to a judgment pronounced by a Court which had no jurisdiction of the cause in which it was rendered. The validity of every judgment depends upon the authority which the Court possessed over the subject of its adjudication, and the judgment of a Court, on a subject over which it had no jurisdiction, is no judgment, but a mere extra judicial opinion." The case, *in the matter of Metzger,* 5 Howard, 191, relied on in the argument as an authority against the power of the sitting Justice here to discharge, conceded " that the legality of the commitment could be inquired into, and that, however erroneous the judgment of the Court be,

either in a civil or criminal case, if it had jurisdiction, and the defend-
ant was duly committed under an execution or sentence, he cannot
be discharged by the writ." I have examined with care the Eng-
lish authorities brought to my attention by the learned counsel who
resists the motion. In *Brennan & Gabius'* Case, 59 E. C. L., 492,
no objection was made to the return that it did not show jurisdic-
tion in the Court to punish the crime of burglary, but it was said to
be bad for not showing power to punish by transportation. Lord
Denman, C. J., said: "That the Court, having competent juris-
diction to try and punish the offense, and the sentence being unre-
versed, the Court could not assume that it was invalid; we are
bound to presume, *prima facie*, that the unreversed sentence of a
Court of competent jurisdiction is correct."

In *Dime's Case*, 68 E. C. L., 544, the only question was, "whether
the order of committal made by the Vice Chancellor was valid,"
and, as he had right to adjudge whether there was a valid injunc-
tion and a breach of it, the Court held it could not review, on a
writ of *habeas corpus*, his judicial decision. *Earle*, J., said: "The
return shows a committal by a Court of competent jurisdiction,
acting within its jurisdiction."

It is not to be questioned, that all Courts possess the inherent
right to maintain their own dignity, by compelling, in their presence,
a due observance of respect and of propriety. They must have the
power to punish for all acts, which, if unchecked, would bring the
administration of justice into odium and disgrace, no matter how
inferior the Court may be. In this attribute there is no distinction
between the highest legislative body, acting in a judicial capacity
on a question of breach of privilege, and a Court confined to the
trial of small and mesne causes. Nor is it to be doubted that all
Courts of Record may punish their own officers, by fine and impris-
onment, for default of obedience to their mandates. This is incident
to their powers at Common Law.

If, however, a Circuit Court of this State can punish a Sheriff for
his failure to execute, not its precept, but that of a Magistrate's
Court, where the cause in which the supposed contempt has been
committed, is not brought before it by some adequate and competent
process, by the force of which it may properly assume jurisdiction,
but simply by its order to answer a rule, the power must be shown
to exist by the force of some statute, clearly and distinctly so de-
claring.

The rights and prerogatives of all Courts must be maintained.

Within their jurisdiction, until reversed by appellate authority, they are supreme; but, whenever these are transcended, their judgments and their orders, wanting the sanction which alone can give them force and effect, are nullities, and therefore void.

Holding that the petitioner, Thomas C. Cox, is not detained in custody by legal warrant, it is ordered and adjudged, that he be discharged.

Let all the papers be filed in the office of the Clerk of the Circuit Court for Darlington County.

The appeal of Cox was heard on the 7th September, 1870, to which day the April Term of the Court had been continued.

*Harllee,* for appellant.

*Spain,* contra.

*Per Curiam.* The judgment of the Court will be confined to the following single question arising out of the brief and grounds of appeal:

Has the Circuit Court jurisdiction, under a mere rule, to require a Sheriff to shew cause why he should not be attached for a contempt for failure to execute a warrant issued and directed to him by a Magistrate, though the Magistrate had, by law, the right to direct such warrant to him for execution?

Under a rule so issuing to shew cause, to which a return was in due form made, Thomas C. Cox, Sheriff of the County of Darlington, was attached, by order of the Circuit Court for the same County, and applied to His Honor the Chief Justice of this Court at Chambers for a writ of *habeas corpus,* which was issued.

The return submitted, as the cause of the caption and detention, the attachment issued by the Circuit Court, under the rule to shew cause why the Sheriff had not executed the warrant so directed to him by the Magistrate.

The question as to the legal custody of the petitioner, Cox, involved the consideration of the jurisdiction of the Circuit Court in passing the very order which the motion now on behalf of the Sheriff seeks to set aside.

The Chief Justice, after hearing full argument, discharged the Sheriff from custody, and filed an opinion, discussing, at length, the power of the Circuit Court to grant the said order, arriving at the conclusion that it was without authority. The identical question there passed upon is the one now presented for our judgment.

We adopt the opinion of the Chief Justice referred to, of which a copy is herewith filed as the opinion of this Court, and the motion is accordingly granted.